MICHAEL D. HAYMAN, SEAFARE CORPORATION AND MY LADY RACHEL, INC. v. WILLIAM A. STAFFORD AND WIFE, VANESSA C. STAFFORD, AND UNITED MANAGEMENT GROUP, INC.

No. 841SC1341

(Filed 1 October 1985)

**Brokers and Factors § 1.1; Trusts § 13— sale of client's real property by financial manager — commission — not subject to real estate license law**

> The trial court erred by granting summary judgment for plaintiffs and by not rendering partial summary judgment for defendants where plaintiffs were in financial distress and asked the male defendant, a financial manager, to help them; the parties agreed that plaintiffs would convey real property to defend-

ants and that the male defendant would manage or sell it for plaintiffs' benefit; part of the property was sold; defendants retained a fee; and plaintiffs sued to recover the fee. Defendant financial manager was beyond the purview of the Real Estate License Law because he was a trustee; the land was conveyed to defendants not just to obtain a better price than plaintiffs could get, but also to enable defendant to obtain time from plaintiffs' creditors, avoid a distress sale under foreclosure, and pay plaintiffs' debts. G.S. 93A-2(c)(5).

　　Judge EAGLES dissenting.

　　APPEAL by defendants from *Watts, Judge*. Judgment entered 4 October 1984 in Superior Court, DARE County. Heard in the Court of Appeals 7 June 1985.

　　Defendants' appeal is from an order of summary judgment holding that plaintiffs are entitled to recover $70,000 of them; an amount that defendants retained as compensation from the sales price of certain real property that they held and sold for plaintiffs' benefit. Plaintiffs sued to recover the money, alleging that it was a fee for selling real estate, which defendants have no license to do. The evidence before the trial court was to the following effect:

　　Plaintiff Hayman was the majority stockholder of Seafare Corporation, a Nags Head restaurant business, and My Lady Rachel, Inc., both of which owned real property on Nags Head Beach. Defendant William A. Stafford, a Virginia resident, is a financial management consultant who does business through a Virginia corporation known as United Management Group, Inc. During 1982 Seafare Corporation was in precarious financial condition and at Hayman's request Stafford arranged for the company to borrow $300,000 from a Virginia bank, and was paid $15,000 for his services. But before long Seafare was again behind in paying its creditors, including the Virginia bank which had a mortgage on the restaurant and was threatening to foreclose, the Internal Revenue Service which was threatening to padlock the restaurant, and the power company which had cut off the electricity for the restaurant. Hayman attempted to alleviate the situation by selling some of the corporate-owned real estate, but the offers he obtained were below the market value of the properties because it was generally known by Nags Head business people that he was in straitened circumstances and had to sell. He consulted Stafford again about his financial difficulties and the possible solutions to them, and after conferring together several

times they concluded that the only feasible courses that were available to him were either to let the bank go ahead and foreclose on the mortgaged property, or to file for reorganization in bankruptcy, or to convey the corporate real property to a third person who could sell it for its true value and apply the proceeds to the debts and expenses. Hayman chose the latter course and asked Stafford to be that third person because he knew that Stafford stood well with the bank and could forestall foreclosure, at least for awhile, and people would know that he was not under pressure to sell. At first Stafford refused to cooperate and suggested that Hayman employ a local lawyer or anyone else that he had confidence in to handle the matter, but later he agreed to serve subject to certain conditions which were written into an offer to purchase agreement for each piece of property. Among other things, the purchase agreements and other papers, which were prepared by a lawyer in accord with instructions received from both parties, provided that Stafford as buyer would receive the property, would assume all of the debts against it, would manage and sell the property, and in the event of a sale would pay the debts, expenses and his "commission as Financial Advisor to the Seller," and would return any surplus to plaintiffs. The papers also provided that the amount of Stafford's compensation would be covered by separate agreements between him and the corporations. None of these documents were signed by the parties, however, because Hayman did not approve some of the provisions concerning the restaurant furnishings; nevertheless the parties proceeded as planned. Hayman's corporations deeded the property involved to Mr. and Mrs. Stafford on 18 February 1983 and Stafford took charge of the property, forestalled foreclosure by the bank, and communicated with prospective purchasers about buying the property and with lending institutions about financing its purchase. On 3 March 1983, Stafford sold some of the property for $850,000 and from the cash payment of $200,000 he retained $70,000 as a "[f]ee paid to United Management Group, Inc. per agreement between Seafare Corporation and W. A. Stafford."

Several months later plaintiffs sued to recover the fee, alleging that there was no agreement for compensation or that if there was it was void because none of the defendants are licensed to sell real estate in North Carolina. In their answer defendants denied that there was no agreement about their compensation

and that they had violated the North Carolina Real Estate License Law. After much discovery by both parties plaintiffs moved for judgment on the pleadings and defendants moved for summary judgment. The court denied defendants' motion and entered summary judgment for plaintiffs.

*Trimpi, Thompson & Nash, by John G. Trimpi, for plaintiff appellees.*

*Leroy, Wells, Shaw, Hornthal & Riley, by Dewey W. Wells, for defendant appellants.*

PHILLIPS, Judge.

In entering judgment for the plaintiffs the court concluded from the evidence presented as a matter of law that in selling the property involved defendants violated the provisions of our Real Estate License Law which prohibits unlicensed persons from selling real estate for others in certain instances. G.S. 93A-1 provides that "it shall be unlawful for any person, partnership, association or corporation . . . to act as real estate broker . . . without first obtaining a license issued by the North Carolina Real Estate Commission." G.S. 93A-2(a), in pertinent part, provides that a real estate broker is anyone who for a valuable consideration sells or offers to sell real estate for others. And G.S. 93A-2(c)(5), in pertinent part, states that the provisions of Chapter 93A do not apply to "[a]ny person, while acting as a trustee under a trust agreement, deed of trust or will, . . ." Defendants contend that the evidence before the court indisputably establishes that Stafford held and sold the property involved as a trustee for the plaintiffs and thus did not violate the Real Estate License Law in doing so. We agree. The evidence plainly shows, as plaintiffs concede, that the land was conveyed to defendants not just to enable Stafford to resell it at a better price than plaintiffs could get for it, but also to enable Stafford to obtain time from plaintiffs' creditors, avoid a distress sale under foreclosure, and pay plaintiffs' debts. In their brief plaintiffs further concede that in holding the land for plaintiffs' benefit and paying their debts from the sale price that defendants acted in a fiduciary capacity and were trustees for plaintiffs "in a sense." We think that Stafford was a trustee in every sense and was thus beyond the purview of the Real Estate License Law.

---

---

Plaintiffs' own evidence indisputably shows that by agreement they turned their property and financial problems over to defendants and that all of the elements of a trust were present: The plaintiffs were in financial distress and asked defendants to help them; the parties agreed that plaintiffs would convey their property to defendants and that defendants would either manage or sell it for the plaintiffs' benefit; and their agreement in that respect was fully carried out. The property was conveyed and defendants sold part of it, used the proceeds for plaintiffs' benefit and stands ready to return the unsold property to plaintiffs. That the parties did not sign the agreements is immaterial; the Statute of Frauds, G.S. 22-2, does not apply to executed contracts. *Dobias v. White*, 240 N.C. 680, 83 S.E. 2d 785 (1954). Since the terms were discussed, agreed to, and substantially performed by all concerned they constitute a perfectly valid trust agreement between the parties; and since defendants sold plaintiffs' land under that agreement Chapter 93A has no application, as G.S. 93A-2(c)(5) explicitly provides. The summary judgment entered for the plaintiffs was therefore in error and we vacate it. The court also erred in not rendering partial summary judgment for the defendants, because the evidence indisputably shows that defendants sold the land under a valid agreement entitling them to be compensated for their services; only the amount of the commission or compensation due defendants is in doubt and is an issue of fact for the court below to determine.

The judgment in favor of the plaintiffs is vacated and the cause is remanded for further proceedings in accord with this opinion.

Vacated and remanded.

Judge BECTON concurs.

Judge EAGLES dissents.

Judge EAGLES dissenting.

I dissent. I disagree with the majority's conclusion that the evidence establishes that Stafford was exempt from the licensing requirements of G.S. Chapter 93A. In my judgment his conduct, considering all the circumstances of record, did not qualify him

for exemption as a trustee pursuant to the provisions of G.S. 93A-2(c)(5).

The Real Estate Licensing Act, Chapter 93A of the General Statutes, is designed for the public's protection, to assure that persons engaged in selling real estate for compensation be regulated. Statutory exemptions should be construed very carefully to assure that the purposes of the Act are not frustrated and that the consuming and using public is protected. The majority opinion would open the door to real estate sales by unlicensed persons who call themselves "trustees" but nevertheless are involved in the transaction primarily as sales agents for compensation.